UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                     )
GEORGE D. HOUSER,                    )
                                     )
            Plaintiff,               )
                                     )
        v.                           )     Civil Action No. 16-0804 (RBW)
                                     )
U.S. DEPARTMENT OF HEALTH AND        )
HUMAN SERVICES,                      )
                                     )
            Defendant.               )
_____ )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment, ECF No. 12, the Plaintiff's Motion for Summary Judgment, ECF No. 33, the Plaintiff's Motion for Partial Summary Judgment, ECF No. 34, the Plaintiff's Motion to Strike the Declaration of Hugh Gilmore, ECF No. 35, the plaintiff's Motion to Extend Time to Surmount Difficulties in Obtaining and Valuing Fair Postage, ECF No. 39, and the plaintiff's Motion to Extend Time to Procure Sufficient Postage for First Class Mailing, ECF No. 41. For the reasons stated below, the Court denies all of these motions.

I. BACKGROUND

George D. Houser ("the plaintiff") brings this civil action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Health & Human Services ("DHHS"), Centers for Medicare and Medicaid Services ("CMS"). Complaint

1

("Compl.") ¶¶ 2, 9-16. Generally, the plaintiff alleges that CMS neither conducted an adequate search for records about himself and corporate entities he once controlled nor released such responsive documents to him. *See id*. ¶¶ 18ab-18af.

The "[p]laintiff requested specific records in letters dated 8 May 2015, 10 May 2015, 16 June 2-15, 21 July 2015, 20 August 2015, 20 August 2015, and 4 December 2015." *Id*. ¶ 9. The first two letters were returned as undeliverable. *Id*. ¶¶ 10-11. CMS received the third letter on June 23, 2015. Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Decl. of Hugh Gilmore ("Gilmore Decl.") ¶ 5. The plaintiff attached to this third letter, dated June 16, 2015, copies of his previous letters dated May 8, 2015 and May 10, 2015, and "CMS assigned these identical requests for records control number 063020157066." Gilmore Decl. ¶ 5. The plaintiff sought "letters, correspondence, notes, data, memoranda, reports, email (Agency originated, or originated elsewhere), other documents, technical manuals, books, photographs, and tangible objects[] in paper format (if possible)," Compl., Ex. 3 (Letter to Hugh Gilmore, Freedom of Information Officer, CMS, from the plaintiff dated June 16, 2015) at 1, regarding the following corporate entities:

> 1. [T]hree skilled convalescent facilities:
>
>    a. Forum Group at Mount Berry Nursing & Rehabilitation Center, LLC; Medicare Provider Number 11-5311; and Medicaid Identification Number . . . 00276[-]229A; and
>
>    b. Forum Group at Moran Lake Nursing & Rehabilitation Center, LLC; Medicare Provider Number 11-5311; and Medicaid Identification Number . . . 00140[-]368A; and
>
>    c. Forum Group at Wildwood Park Nursing & Rehabilitation Center, LLC; Medicare Provider Number 11-5574; and Medication Identification Number . . . which is currently unavailable.
>
> 2. All other skilled convalescent facilities with different names of record believed to have provided skilled convalescent services in the

> above premises described in paragraph 1, supra, for the dates of service between (and including) May 1, 2003 through December 31, 2007; and
>
> 3. The associated management companies Forum Health Care Group, Inc. (alternately, "Forum Healthcare Group, Inc.") . . . and Forum Group Management Services, Inc.

Compl., Ex. 3, Ex. A at 1. In addition to "financial, accounting, and reimbursement records," *id*., Ex. 3, Ex. A at 1, the plaintiff also sought "program[,] regulatory and professional records generated by [CMS] overseeing the above indicated facilities," *id*., Ex. 3, Ex. B at 1. Lastly, the plaintiff requested waiver of all search fees and expedited processing of his request. *See id*., Ex. 3 at 1, 4.

CMS acknowledged receipt of the June 16, 2015 request, *see id*., Ex. 8 (Letter to the plaintiff from Gilbert Silva III, Deputy Regional Administrator of the CMS, dated July 1, 2015), and "worked to identify the appropriate custodians of the requested records," Gilmore Decl. ¶ 7. Then "CMS transmitted the FOIA request to [its] Region 4 office, which in turn referred it to the CMS Medicare administrative contractor, Cahaba GBA ('CGBA')." *Id*. The defendant's declarant explained that contractors such as CGBA "are responsible for maintaining the types of Medicare financial and claims processing information" the plaintiff requested. *Id*. Insofar as the plaintiff sought Medicaid data, the declarant explained that the Medicaid "program is administered by a state entity – in this case, the Georgia Department of Community Health, Division of Medical Assistance," not by CMS. *Id*.

According to the declarant, CGBA searched both paper and electronic records. It determined that responsive records were likely found in "three boxes of paper documents . . . it received from Blue Cross and Blue Shield of Georgia in 2009." *Id*. ¶ 8. It "locate[d] 55 pages of documents specific to Moran Lake Nursing and Rehabilitation for the time period 2003-2007[.]" *Id*. It searched electronic records "for claims data for the providers [identified in the plaintiff's

3

FOIA request] using each entit[y]'s Provider Transaction Access Number ('PTAN')," which is described as "a unique identifying number assigned to all Medicare providers." *Id*. ¶ 9. The search sought claims data from May 1, 2003, through December 31, 2003, and from January 1, 2004, through December 31, 2007. *Id*. The declarant explained that "the PTAN's for the entities identified in [the plaintiff's] FOIA request were terminated in 2007 and thus no records were located for the 2008-2012 timeframe." *Id*.

CMS released to the plaintiff "55 unredacted pages consisting of 'Notices of Medicare Program Reimbursement,' settlement notices, and reviews of Medicare cost reports," *id*. ¶ 11, and "several Excel spreadsheets documenting paid and denied Medicare claims related to the specific entities" listed in the FOIA request, *id*. ¶ 12. CMS redacted from the Excel spreadsheets the column where each beneficiary's identification number ("HIC_NR") is listed. *Id*. ¶ 14. Relying on FOIA Exemption 6, the declarant determined that release of "all of the HIC_NR columns," *id*., "would result in a clearly unwarranted invasion of personal privacy," *id*. ¶ 15.

## II. DISCUSSION

The Court may grant summary judgment to an agency as the movant if the agency shows that there is no genuine dispute as to any material fact and if it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). The Court may grant summary judgment based on information in an agency's supporting declaration if the declaration is "relatively detailed and nonconclusory[.]" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks

and footnote omitted). Further, a supporting declaration must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). The Court has reviewed CMS's supporting declaration and finds it deficient in several respects.

First, the plaintiff alleges that he sent a total of seven letters to CMS, the third of which CMS treats as the operative FOIA request. The declarant does not mention the plaintiff's July 21, 2015, August 20, 2015, or December 4, 2015 letters, some which appear to have modified the original FOIA request. For example, the second of two letters dated August 20, 2015, purports to "change the date range for [the FOIA Request] by extending the date the range ends to either the date the request is fulfilled, or preferably, 12/31/2015." Compl., Ex. 6 (Letter to Donna Mott, Freedom of Information Act Officer, CMS, DHHS, from the plaintiff dated August 20, 2015). It is not clear whether CMS received the plaintiff's additional letters, and if it did receive them, the declarant does not explain whether or how CMS responded to them.

Second, the declarant does not indicate whether or how CMS responded to the plaintiff's requests for expedited processing of his FOIA request and for a waiver of the search fees.

Third, the plaintiff's FOIA request was long and seemingly complex. The declarant does not explain how CMS interpreted the request, why CMS transmitted the plaintiff's FOIA request to its Region 4 office, whether it searched for records pertaining to all of the corporate entities identified in the plaintiff's FOIA request, or whether or why its search was limited to the three skilled convalescent facilities.

5

Fourth, although the declarant explains CMS's reasons for referring the FOIA request to its contractor, CGBA, the declarant states in a conclusory manner that "CGBA conducted a search for responsive records," Gilmore Decl. ¶ 8, in paper and electronic form, *see id*. ¶¶ 8-9. He does not explain, however, the types of records CGBA maintains, how CGBA identified "three boxes of paper documents . . . it received from Blue Cross and Blue Shield of Georgia in 2009," *id*. ¶ 8, as likely places to find responsive records, describe the scope of CGBA's search or its search methods other than queries it made using Provider Transaction Access Numbers, *id*. ¶ 9.

Fifth, CMS relies on FOIA Exemption 6 to justify its decision to withhold beneficiaries' identification numbers from Excel spreadsheets. *Id*. ¶¶ 13-14. Missing from the declaration, however, is any description of what these identification numbers represent, or anything more than a conclusory statement that their disclosure would constitute a clearly unwarranted invasion of the beneficiaries' personal privacy.

Sixth, the declarant does not indicate that all reasonably segregable information has been released.

In the absence of clear explanations for the agency's decisions, the Court cannot determine whether CMS has fulfilled its obligations under the FOIA. Accordingly, it is hereby

ORDERED that the Defendant's Motion for Summary Judgment [12], the Plaintiff's Motion for Summary Judgment [33], the Plaintiff's Motion for Partial Summary Judgment [34], and the Plaintiff's Motion to Strike the Declaration of Hugh Gilmore [35] are all DENIED WITHOUT PREJUDICE; it is

FURTHER ORDERED that the plaintiff's Motion to Extend Time to Surmount Difficulties in Obtaining and Valuing Fair Postage [39] and Motion to Extend Time to Procure Sufficient Postage for First Class Mailing [41] are DENIED as moot; and it is

FURTHER ORDERED that, not later than October 31, 2017, the defendant either shall file a renewed motion for summary judgment, or shall submit a proposed schedule for further proceedings in this action.

SO ORDERED.

DATE: September 15, 2017

/s/
REGGIE B. WALTON
United States District Judge